## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **FRANK BRAMANTE** and **SALVATORE BRAMANTE**, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | **CIVIL ACTION NO.** |
| **DOUGLAS A. MCCLAIN, SR.**, **DOUGLAS A. MCCLAIN, JR.**, **SW ARGYLL INVESTMENTS, LLC**, **YELLOW JACKET MANAGEMENT COMPANY**, **F.I.T. MANAGEMENT, LLC** a/k/a **F.I.T. MANAGEMENT GROUP, LLC**, **F.I.T. HOLDINGS, LTD.**, **B.V.I. OFFSHORE FUND**, **THE FIT GROUP, INC.**, **THE ARGYLL GROUP, LLC**, **F.I.T. EQUITIES, LLC**, **F.I.T. INVESTMENTS, LLC**, **F.I.T. CAPITAL, LLC**, **ARGYLL MANAGEMENT, LLC**, **ARGYLL CAPITAL, LLC**, **ARGYLL ENERGY, LLC**, **ARGYLL INVESTMENT, LLC**, **THE F.I.T. GROUP**, a Texas Limited Liability Company, **ARGYLL BIOTECHNOLOGIES, LLC**, **ARGYLL EQUITIES, LLC**, **PADMORE HOLDINGS, LTD.**, and **DEBRA A. MCCLAIN**, | § § § § § § § § § § § § § § § § § § § § § § § | **SA-06-CA-0010 OG (NN)** |
| Defendants, | § § § | |
| and | § § | |
| **FIRST SOUTHWEST COMPANY**, | § § § | |
| Trustee. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON THE ARGYLL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This memorandum and recommendation addresses the motion for summary judgment filed by the Argyll defendants.[1] The memorandum and recommendation is the second of other memorandums and recommendations to follow to resolve pending motions prior to trial. Because the District Court is already familiar with this case—having conducted a hearing at a previous time—this memorandum and recommendation includes only the background the District Court needs to resolve the motion for summary judgment.

### Background and Nature of the Case

This lawsuit stems from the plaintiffs' attempt to collect on a $4,500,000.00 default judgment against defendant Douglas A. McClain, Sr. (McClain Sr.) The judgment was entered in the United States District Court for the District of Massachusetts on June 1, 2005. The plaintiffs here allege that McClain Sr. has engaged in fraudulent money transfers to avoid payment of the judgment. The plaintiffs allege that McClain Sr. has transferred assets to his son—defendant Douglas McClain Jr.—and other family members to avoid payment. The plaintiffs have also sued McClain Sr.'s wife—Debra McClain—and various business entities of which the plaintiffs allege that McClain Sr. is a member, partner, owner, shareholder or authorized agent. The parties refer to some of these entities as the Argyll defendants.[2] The Argyll defendants filed the motion for summary judgment addressed by this memorandum and recommendation. Summary judgment is appropriate "if the pleadings, the discovery and

---

[1] Docket entry # 160.

[2] These defendants are The Argyll Group, LLC; Argyll Management, LLC; Argyll Capital, LLC; Argyll Investment, LLC; Argyll Biotechnologies, LLC; and Argyll Equities, LLC.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

## The Plaintiffs' Alter Ego and Corporate-Piercing Claims

The plaintiffs maintain that the Argyll defendants are vicariously liable for the McClain Sr. judgment based on alter ego.[4]  The Argyll defendants maintain they are entitled to summary judgment on this theory because no evidence exists that they are alter egos of McClain Sr.  The elements of alter ego are set out in the Supreme Court of Texas opinion, *Castleberry v. Branscum*.[5]  There, the Supreme Court of Texas explained that Texas courts "disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result."[6]  The plaintiffs rely on that theory to

---

[3]Fed. R. Civ. P. 56.

[4]*See* plaintiffs' sixth amended complaint, docket entry # 297, ¶¶ 83-8.

[5]721 S.W.2d 270, 272 (Tex. 1986).

[6]*Castleberry*, 721 S.W.2d at 271-2.  The court explained that the corporate fiction is disregarded in the following circumstances:

> (1) when the fiction is used as a means of perpetrating fraud;
> (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;
> (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;
> (4) where the corporate fiction is employed to achieve or perpetrate monopoly;
> (5) where the corporate fiction is used to circumvent a statute; and
> (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Castleberry*, 721 S.W.2d at 272.

support their allegations that McClain Sr. has used the Argyll defendants to perpetuate a fraud and as a means to evade the judgment.[7] The plaintiffs seek to hold the Argyll defendants liable using a reverse corporation-piercing theory.[8]  "[A] reverse piercing case requires the creditor to establish an alter ego relationship between the individual debtor and corporation in order to treat them as one and the same."[9]  "Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice."[10]

> [Alter ego] is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.[11]

"Texas cases . . . have refused to disregard the corporate fiction under the alter ego doctrine and to treat an individual and corporation as one and the same where the individual did not own any

---

[7]*See* plaintiffs' sixth amended complaint, docket entry # 297, ¶ 85.

[8]The United States Court of Appeals for the Fifth Circuit has described the reverse corporate-piercing theory as follows:

> The ultimate goal in a reverse piercing case is unique; rather than merely disregarding the corporate fiction and holding the shareholders accountable, the court treats the individual and the corporation as "one and the same."  "The remedy is equally available to hold the corporation liable for debts of the controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability."

*Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243-4 (5th Cir. 1990) (citations omitted).

[9]*Zahra Spiritual Trust*, 910 F.2d at 244.

[10]*Id*.

[11]*Id*.

of the corporation's outstanding stock."[12]

The Argyll defendants maintain that no evidence exists of unity because the plaintiffs cannot show that McClain Sr. has an ownership interest in, or control over, the Argyll defendants. The plaintiffs, however, presented summary judgment evidence raising a fact question about these issues. That evidence is discussed in the following paragraphs.

The plaintiffs presented evidence suggesting that McClain Sr. created a group of corporate entities with similar names, one being F.I.T. Management Group. This memorandum refers to these entities collectively as the F.I.T. defendants.[13] The plaintiffs' summary-judgment evidence suggests that the F.I.T. entities ultimately became the Argyll entities that are defendants in this case. The plaintiffs presented a partnership agreement showing that McClain Sr., McClain Jr. and James T. Miceli were partners in F.I.T.[14] Although the partnership agreement indicates that the three were equal partners in companies resulting from the partnership, McClain Sr. testified that he was "F.I.T. Management."[15] McClain Sr. stated that he was the only shareholder and owner of F.I.T.[16] McClain Sr. explained that he was a principal of F.I.T. Group and F.I.T. Holdings in 2003, but worked as a consultant for Argyll.[17] Even though McClain Sr.

---

[12]*Id*. at 245.

[13]These defendants are: F.I.T. Management, LLC a/k/a F.I.T. Management Group, LLC; F.I.T. Holdings, Ltd.; The FIT Group, Inc; F.I.T. Equities, LLC; F.I.T. Investments, LLC; F.I.T. Capital, LLC; and The F.I.T. Group, a Texas Limited Liability Company.

[14]*See* appx. to docket entry #s 189 & 190, exh. A, tab to Nov. 6, 2007 deposition.

[15]*See* appx. to docket entry #s 189 & 190, exh. B, p. 122 of Oct. 19, 2006 deposition.

[16]*See* appx. to docket entry #s 189 & 190, exh. B, p. 26 of Jan. 5, 2007 deposition.

[17]*See* appx. to docket entry #s 189 & 190, exh. B, p. 40 of Oct. 19, 2006 deposition.

represented that he was the sole owner of F.I.T., Miceli testified that McClain Sr. had a one-third equity stake in the F.I.T. companies.[18]

The summary-judgment evidence indicates that prior to October 2002, McClain Jr. and James T. Miceli either worked for F.I.T. or were partners in F.I.T.  McClain Jr. and Miceli claim they left F.I.T. to form the Argyll defendants, yet they continued to receive money from F.I.T.[19]  Around the time Argyll was created, F.I.T. ceased to exist.[20]  Argyll kept the F.I.T. lease space,[21] signed a lease reflecting F.I.T. instead of Argyll,[22] and used the same phone number as F.I.T.[23]  The amount of $39,000.00 was transferred from a F.I.T. bank account to Argyll in November 2002.[24]  Miceli testified that he transferred money from Argyll to F.I.T.[25]  A letter of introduction for Argyll Equities purports to introduce the addressee to the principles and appropriate parties that make up the F.I.T. Family and reflects the F.I.T. Group's website.[26]

Miceli described McClain Sr.'s role in Argyll as a consultant, receiving a monthly

---

[18]*See* appx. to docket entry #s 189 & 190, exh. A, pp. 32-3 of Nov. 6, 2006 deposition.

[19]*See* appx. to docket entry #s 189 & 190, exh. B, p. 36 of Jan. 5, 2007 deposition.

[20]*See* appx. to docket entry #s 189 & 190, exh. A, p. 42 of deposition of Nov. 6, 2006.

[21]*See* appx. to docket entry #s 189 & 190, exh. A, p. 84 of deposition of Nov. 6, 2006.

[22]*See id.* at p. 214.

[23]*See* appx. to docket entry #s 189 & 190, exh. C, pp. 60-1 of deposition of Oct. 9, 2006.

[24]*See* docket entry # 370, exh. B.

[25]*See* appx. to docket entry #s 189 & 190, exh. C, pp. 148-9 of deposition of Oct. 9, 2006.

[26]*See* docket entry # 370, exh. A.

salary.[27]  Miceli testified that McClain Sr. had no ownership interest in Argyll, but he stated that McClain Sr. was a director of Argyll.[28]  Argyll paid for McClain Sr.'s health insurance, cell phone and car,[29] and transferred money to McClain Sr.'s wife—defendant Debra McClain—and McClain Sr.'s mother, Muriel McClain.[30]  Even though they left F.I.T., Miceli and McClain Jr. signed checks from F.I.T.'s account in 2003.[31]

Craig Zabala testified that McClain Sr. told him that he was changing F.I.T.'s name to Argyll–that the name change was a conversion.[32]  Zabala stated that McClain Sr. told him that McClain Jr. was going to work for him, along with McClain Sr.'s partner, Miceli.[33]  Steve Martin attested that McClain Sr. told him that McClain Jr. and Miceli started Argyll with assets and capital from F.I.T. Management Group, leaving F.I.T.'s debts left with McClain Sr.[34]  Martin further attested that McClain Jr. confided in him that Argyll really belonged to McClain Sr., but that they had to keep Argyll clean from all of F.I.T.'s liabilities.[35]

Although the plaintiffs presented additional summary-judgment evidence, the evidence

---

[27]*See* appx. to docket entry #s 189 & 190, exh. A, p. 27-8 of Nov. 6, 2007 deposition.

[28]*See* appx. to docket entry #s 189 & 190, exh. A, p. 127 of Nov. 6, 2007 deposition.

[29]*See id*. at pp. 71-2, 126.

[30]*See id.* at pp. 142-5.

[31]*See id.* at pp. 178-81; see appx. to docket entry #s 189 & 190, exh. C, pp. 46-7 & 60 of deposition of Oct. 18, 2006.

[32]*See* appx. to docket entry # 189 & 190, exh. F.

[33]*See id.*

[34]*See* appx. to docket entry #s 189 & 190, exh H.

[35]*See id.*

discussed above is sufficient to raise a fact question about whether McClain Sr. holds an ownership interest in the Argyll defendants and whether he exercises control over the Argyll defendants. If McClain Sr. was the sole owner of the F.I.T. entities and those entities became the Argyll entities, McClain Sr. would have an ownership interest in the Argyll defendants and exercise control over them. The Argyll defendants are not entitled to summary-judgment based on their argument that no evidence exists that McClain Sr. has an ownership interest in the Argyll defendants.

### The Plaintiffs' Liability Claims Based on Partnership

In the alternative, the plaintiffs seek to hold the Argyll defendants liable as partners of McClain Sr., at least to the extent of McClain Sr.'s one-third interest.[36] The plaintiffs allege that McClain Sr. entered into a secret partnership with McClain Jr. and Miceli and that the secret partnership agreement applies to the Argyll defendants. The Argyll defendants seek summary judgment on this theory, arguing that no evidence exists of a partnership between the Argyll defendants and McClain Sr.

The plaintiffs allege that McClain Sr., McClain Jr. and Miceli entered into the secret partnership agreement in November 2001[37] and back-dated the agreement to reflect January 15, 1999.[38] These dates are important because they determine the Texas law that applies to the alleged partnership. Partnerships which were formed after January 1, 1994, but before the enactment of the Texas Business Organization Code in 2006, are governed by the Texas Revised

---

[36] *See* docket entry # 297, ¶¶ 89-91.

[37] *See id.* at ¶ 22,

[38] *See id.* at ¶ 33.

Partnership Act.[39] Under that Act, "an association of two or more persons to carry on a business for profit as owners creates a partnership, whether the persons intend to create a partnership and whether the association is called a 'partnership,' 'joint venture,' or other name."[40] The Act lists the following factors as showing that a partnership has been created:

(1) receipt or right to receive a share of profits of the business;
(2) expression of an intent to be partners in the business;
(3) participation or right to participate in control of the business;
(4) sharing or agreeing to share:
    (A) losses of the business; or
    (B) liability for claims by third parties against the business; and
(5) contributing or agreeing to contribute money or property to the business.[41]

In explaining why they are entitled to summary judgment, the Argyll defendants maintain that the partnership agreement does not name the Argyll defendants,[42] no evidence exists that

---

[39] *See* TX. PRACTICE SERIES, BUS. ORGANIZATIONS, § 6.1 for how to determine which partnership law applies. The Texas Uniform Partnership Act, which preceded the Texas Revised Partnership Act, expired on January 1, 1999. *See* TEX. REV. CIV. ST. § 6132b (expired), historical & statutory notes.

[40] TEX. REV. CIV. STAT. ANN. art. 6132b-2.02(a) (Vernon Supp. 2006).

[41] *Id*. at art. 6132b-2.03(a). In setting forth the requirements for proving a partnership, the Argyll defendants rely on a long line of Texas cases listing the elements as: "(1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise." *See Coastal Plains Development Corp. v. Micrea*, 572 S.W.2d 285, 287 (Tex. 1978). This statement of partnership elements evolved prior to the enactment of the Texas Revised Partnership Act. More recently, Texas courts have relied on the statutory lists of factors for determining whether a partnership exists. *See Reagan v. Lyberger*, 156 S.W.3d 925, 927 (Tex. App.—Dallas 2005, no pet.); *McDowell v. McDowell*, 143 S.W.3d 124, 129 (Tex. App.—San Antonio 2004, pet. denied); *Torres v. Kelley*, No. 13-04-313-CV, 2007 WL 528849, at *4 (Tex. App.—Corpus Christi Feb. 22, 2007, no pet.).

[42] *See* docket entry # 160, ¶ 7.3.

McClain Sr. is partner in Argyll,[43] and the agreement hasn't been in effect for years. [44] The plaintiffs, however, have presented sufficient summary-judgment evidence to raise a fact question about these issues. Although the partnership agreement doesn't specifically name the Argyll defendants, the language of the agreement is broad enough to encompass the Argyll defendants. The agreement purports to create a partnership for the purpose of "devising, creating, designing, pursuing, formulating, enacting and engaging in all companies, corporations, partnerships, or legal entities which are or have been or will be used by [McClain Sr, McClain Jr, and Miceli] for the purpose of creating any income or tangible item recognized as having value foreign or domestic."[45] The agreement names the entities created by and for the benefit of the partnership as including a group of entities operating under the name "The F.I.T. Group," but "not limited to" that group.[46] Although the Argyll defendants maintain that the agreement has not been in effect for several years, the agreement states its term as "fifteen years, unless the partners mutually agree in writing to a shorter period."[47] The summary-judgment evidence does not include a writing terminating the agreement by mutual agreement.

In addition, the summary-judgment includes evidence of the statutory factors listed above for showing partnership:

(1) Receipt or right to receive a share of profits of the business: The partnership

---

[43]*See* docket entry # 232, ¶ 2.1.

[44]*See* docket entry # 160, ¶ 7.3.

[45]*See* appx. to docket entry #s 189 & 190, exh. A, attach. 1, ¶ 1.

[46]*See id.* at ¶ 2.

[47]*See id.* at ¶ 6.

agreement states that, "[t]he profits and losses of the partnership shall be divided amongst the partners . . . ."[48]

(2) Expression of an intent to be partners in the business: The agreement states that McClain Sr., McClain Jr. and Miceli "agree that they shall be exclusive partners. . . ."[49]

(3) Participation or right to participate in control of the business: The partnership agreement states that "[e]ach partner shall have equal rights to manage and control the partnerships and it's [sic] businesses."[50]  McClain Sr. testified that he was F.I.T.[51]  Craig testified that McClain Sr. told him that he was changing F.I.T.'s name to Argyll.[52]  Martin attested that McClain Jr. confided in him that Argyll really belonged to McClain Sr.[53]  If McClain Sr. was the sole shareholder of the F.I.T. entities and those entities became the Argyll defendants, McClain Sr. would have the right to participate in and control the Argyll defendants.  Miceli testified that McClain Sr. was a director of Argyll.[54]  As a director, McClain Sr. would have a right to participate in and control the Argyll defendants.  Evidence indicating that $39,000.00 from an F.I.T. account was used to open Argyll's bank account at the same bank suggests that McClain

---

[48]See id. at ¶ 5.

[49]See id. at ¶ 1.

[50]See id. at ¶ 3.

[51]See appx. to docket entry #s 189 & 190, exh. B, p. 122 of Oct. 19, 2006 deposition.

[52]See appx. to docket entry # 189 & 190, exh. F.

[53]See id.

[54]See appx. to docket entry #s 189 & 190, exh. A, p. 127 of Nov. 6, 2007 deposition.

Sr. used his assets in F.I.T. to start the Argyll defendants.[55] This evidence indicates that McClain Sr. has participated in and has exercised control over the Argyll defendants.

(4) Sharing or agreeing to share the losses of the business or liability for claims by third parties against the business: The partnership agreement states that the "losses of the partnership shall be divided amongst the partners . . . ."[56]

(5) Contributing or agreeing to contribute money or property to the business: The partnership agreement states that the "capital contribution of each partner shall consist of the property, services, or cash that each partner has contributed."[57]

The summary-judgment evidence discussed above is sufficient to raise a fact question about the existence of a partnership between the Argyll defendants and McClain Sr. such that the Argyll defendants are not entitled to summary judgment.

### The Plaintiffs' Claims Based on Joint Enterprise

The plaintiffs also seek to hold the Argyll defendants liable based on a joint enterprise.[58] The plaintiffs allege that McClain Sr. worked together with the Argyll defendant in a joint enterprise to engage in actual and constructive fraud, allowing the court to pierce the business entities and hold the entities liable for the judgment and fraudulent transfers.[59] The Argyll defendants move for summary judgment on this claim, arguing that no evidence exists that they

---

[55]*See* docket entry # 370, exh. B.

[56]*See* appx. to docket entry #s 189 & 190, exh. A, attach. 1, ¶ 5.

[57]*See id.* at ¶ 4.

[58]*See* docket entry # 297, ¶¶ 101-6.

[59]*Id*. at ¶¶ 103-4.

acted within the scope of a joint enterprise, precluding joint and several liability for the McClain Sr. judgment.[60]  In particular, the Argyll defendants maintain that no evidence exists of a common business purpose, and an equal right to direct and control the enterprise.[61]

"The elements which are essential to a joint enterprise are commonly stated to be four: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control."[62]  The Argyll defendants maintain no evidence exists to show the third and fourth elements.  The "third element of joint enterprise requires a monetary interest common among the members of the group; it must be one 'shared without special or distinguishing characteristics.'"[63]  "There must . . . be evidence that the monetary benefits were shared among the members without special or distinguishing characteristics . . . ."[64]  Although the Argyll defendants maintain that the summary-judgment evidence establishes that F.I.T. had no assets when it dissolved and that no evidence exists of an integration of resources between F.I.T. and the Argyll defendants, the plaintiffs presented summary-judgment evidence showing that

---

[60]*See* docket entry # 160, ¶ 8.1-8.5.

[61]*See id.*

[62]*Walker v. Messerschmitt Bolkow Blohm GmBH*, 844 F.2d 237, 240 (5th Cir. 1988).  *See Hinkle v. Adams*, 74 S.W.3d 189, 195 (Tex. App.—Texarkana 2002, no pet.); *Greg Lair, Inc. v. Spring*, 23 S.W.3d 443, *447 (Tex. App.—Amarillo 2000, no pet.).

[63]*Omega Contracting v. Torres*, 191 S.W.3d 828, 850 (Tex. App.—Fort Worth 2006, no pet.).

[64]*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 532 (Tex. 2002).

$39,000.00 was transferred from an F.I.T. account to an Argyll account.[65] The plaintiffs also presented evidence showing that Miceli transferred money from Argyll to F.I.T.,[66] and that McClain Jr. and Miceli received money from F.I.T. after they purportedly left F.I.T. to form the Argyll defendants.[67] That evidence shows that F.I.T. had assets and that those assets were integrated with the assets of the Argyll defendants.[68] Considered with the partnership agreement—stating its purpose as pursuing all companies which will be used by the parties to create income—and Argyll Equities's letter of introduction—introducing the addressee to the principles and appropriate parties that make up the F.I.T. Family[69]—the summary-judgment evidence is sufficient to raise a fact question about whether McClain Sr. shared a community of pecuniary interest in a common purpose with the Argyll defendants.

"The 'critical inquiry' in analyzing the [fourth] element is whether the defendant charged with joint enterprise liability had the right to control the tortfeasor at the time of the tortious conduct."[70] "[T]he equal-right-to-control element means 'that each [participant] must have an authoritative voice or, . . . must have some voice and right to be heard.'"[71] Here, the time of the tortious conduct is not the time McClain Sr. defrauded the plaintiffs as the Argyll defendants

---

[65]*See* docket entry # 370, exh. B.

[66]*See* appx. to docket entry #s 189 & 190, exh. C, pp. 148-9 of deposition of Oct. 9, 2006.

[67]*See* appx. to docket entry #s 189 & 190, exh. B, p. 36 of Jan. 5, 2007 deposition.

[68]*See also* appx. to docket entry #s 189 & 190, exh H.

[69]*See* docket entry # 370, exh. A.

[70]*Omega Contracting*, 191 S.W.3d at 851.

[71]*Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 614 (Tex. 2000) (citation omitted).

suggest, but the time that McClain Sr. made the alleged transfers to avoid payment of the judgment. Relevant to that time period, the plaintiffs presented summary-judgment evidence indicating that McClain Sr. owned the F.I.T. entities and converted those entities to the Argyll defendants.[72] They also presented evidence indicating that McClain Sr. was a director for Argyll.[73] McClain Sr. would have an authoritative voice or some voice and right to be heard if he owned the Argyll defendants or was a director for the Argyll defendants. The plaintiffs have presented summary-judgment evidence raising a fact question about the right to control. Having presented summary-judgment evidence raising a fact question about the third and fourth elements of their joint-enterprise claim, the plaintiffs survive summary judgment.

### Plaintiffs' Claims under the Texas Uniform Fraudulent Transfer Act

The plaintiffs allege that the individuals and entities named as defendants violated the Texas Uniform Fraudulent Transfer Act (TUFTA).[74] The plaintiffs maintain that actionable transfers include the creation of the Argyll defendants following the dissolution of the F.I.T. companies.[75] The plaintiffs maintain that the value of real and intangible aspects of the F.I.T. companies was transferred to the Argyll defendants.[76] The Argyll defendants move for summary judgment on this claim, arguing that no evidence exists to show that McClain Sr. transferred any

---

[72]*See* appx. to docket entry #s 189 & 190, exh. B, p. 122 of Oct. 19, 2006 deposition; appx. to docket entry #s 189 & 190, exh. B, p. 26 of Jan. 5, 2007 deposition; appx. to docket entry # 189 & 190, exh. F; appx. to docket entry #s 189 & 190, exh H.

[73]*See* appx. to docket entry #s 189 & 190, exh. A, p. 127 of Nov. 6, 2007 deposition.

[74]*See* docket entry # 297, ¶¶ 92-100.

[75]*See id.*

[76]*See id.*

assets to the Argyll defendants. They argue that the plaintiffs are not entitled to any of the remedies available to creditors under the TUFTA because no evidence exists that McClain Sr. fraudulently transferred assets to an Argyll defendant.[77]

The TUFTA provides remedies for creditors defrauded by a judgment debtor's improper transfer of property.[78] "The purpose of [T]UFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach."[79] "'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."[80]

Although the Argyll defendants maintain no evidence exists that McClain Sr. transferred assets to them, the plaintiffs presented summary-judgment evidence that raises a fact question about that issue. Specifically, summary-judgement evidence shows that F.I.T. transferred $39,000.00 to Argyll on November 5, 2002[81] and $5,000.00 to Argyll on March 17, 2003.[82] If McClain Sr. owned F.I.T. as he testified,[83] then the plaintiffs' summary-judgment evidence indicates that McClain Sr. used F.I.T. to transfer assets to the Argyll defendants. Consequently,

---

[77]*See* docket entry # 160, ¶¶ 9.1-9.8.

[78]*See* TEX. BUS. & COMM. CODE ANN. §§ 24.001-24.013 (Vernon 2002 & Supp. 2006).

[79]*Telephone Equipment Network v. TA/Westchase Place*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

[80]TEX. BUS. & COMM. CODE ANN. § 24.002(12) (Vernon 2002).

[81]*See* docket entry # 370, exh. B.

[82]*See* appx. to docket entry #'s 189 & 190, exh. D, p. 27.

[83]*See* appx. to docket entry #s 189 & 190, exh. B, p. 122 of Oct. 19, 2006 deposition.

the Argyll defendants are not entitled to summary judgment.

### The Plaintiffs' Claims Based on Conspiracy

The plaintiffs allege that the defendants, including the Argyll defendants, conspired by agreeing to commit fraudulent transfers to avoid collection on the judgment.[84] The Argyll defendants ask for summary judgment on this claim, arguing that the plaintiffs' claim does not state a claim under Texas law.[85] In the alternative, the Argyll defendants argue that Texas law does not impose liability on a transferee beyond any amount actually fraudulently transferred.[86]

"[T]he Texas Supreme Court [has] held that civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."[87] In this case, the underlying tort is the alleged violation of the TUFTA. Although few Texas cases consider claims involving a conspiracy to make fraudulent transfers, sufficient case law exists to support the plaintiffs' conspiracy claim.[88] I did not find any authority, however, supporting liability beyond

---

[84] *See* docket entry # 297, ¶¶ 107-10.

[85] *See* docket entry # 160, ¶¶ 10.1-10.6.

[86] *See id.*

[87] *Yokogawa Corp. of America v. Skye Intern. Holdings*, 159 S.W.3d 266, 272 (Tex. App.—Dallas 2005, no pet.).

[88] *See Yokogawa Corp. of Am.*, 159 S.W.3d at 272 (affirming summary judgment on conspiracy claim because summary judgment was proper on the underlying claim of fraudulent transfer); *Chu v. Hong*, 185 S.W.3d 507, 513 (Tex. App.—Fort Worth 2005, pet. granted) (determining that the TUFTA created personal liability for defendant-lawyer who conspired with defendant husband to fraudulently transfer asset to prevent plaintiff-wife from obtaining her share); *Lentino v. Cullen Ctr. Bank & Trust*, 14-00-00692-CV, 2002 WL 220421, at *11 (Tex. App.—Houston [14 Dist.] Feb. 14, 2002, no pet.) (overruling appellant's issue challenging the sufficiency of the evidence supporting a cause of action for conspiracy to fraudulently transfer property); *Intervest Capital Group,*

the amounts actually transferred.  The Argyll defendants are not entitled to summary judgment on the plaintiffs' conspiracy claim.

## Conclusion

After considering the Argyll defendants' motion for summary judgment (docket entry # 160), I recommend the motion be denied.  The defendants are not entitled to summary judgment on the plaintiffs' alter ego and corporate-piercing claims, the plaintiffs' claims based on partnership, the claims based on joint enterprise, or the TUFTA claim because the plaintiffs presented summary-judgment evidence raising fact questions about issues material to those claims.  The defendants are not entitled to summary judgment on the plaintiffs' conspiracy claim because Texas law provides for a conspiracy claim that is based on a violation the TUFTA.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties who have entered an appearance, by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this memorandum and recommendation must be filed within 10 days after

---

*Ltd./Oscar Waymond Lightfoot v. Lightfoot*, No. 03-97-00452-CV, 1998 WL 818037, at *8 (Tex. App.—Austin Nov. 30, 1998, no pet.) (reviewing the sufficiency of the evidence supporting the jury's finding that the defendants participated in a civil conspiracy to fraudulently transfer a ranch); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 167 (Tex. App.—Houston [14 Dist.] 1996, writ denied) (considering whether sufficient evidence showed that the defendant bank engaged in a civil conspiracy with the judgment debtors to fraudulently transfer funds); *Donald M. White, Kathleen White, d/b/a Pine Forest Assoc. v. Melvin D. Babcock, Babcock Mgmt. Corp., Transamerica Rental Fin. Corp.*, No. 14-94-00468-CV, 1995 WL 502942, at *3 (Tex. App.—Houston [14th Dist.] Aug. 24, 1995, no writ) (determining that the district court properly granted summary judgment on the plaintiffs' claims that the defendants engaged in a conspiracy because they did not commit a fraudulent transfer).

being served with a copy of same, unless this time period is modified.[89]  Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[90]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[91]

**SIGNED** on December 18, 2007.

*[signature: Nancy Stein Nowak]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[89] 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[90] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[91] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-9 (5th Cir. 1996).